| | | |
|---|---|---|
| CHERYL JANKY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | NO. 2:07-CV-339 PPS APR |
| SPEROS BATISTATOS, LAKE COUNTY | ) | |
| CONVENTION & VISITORS BUREAU, | ) | |
| and its BOARD OF DIRECTORS, | ) | |
| Individually, Jointly, and Severally and | ) | |
| ATTORNEYS TIMOTHY JORDAN, | ) | |
| ROBERT GOLDSTEIN, DANIEL | ) | |
| KUZMAN and Agents known and unknown, | ) | |
| JOHN DOES, Jointly and Severally, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Cheryl Janky and her lawyers have evidently fallen prey to the "sunk-cost fallacy" a theory by which individuals throw good time and money after bad even when the logical decision is to cut bait. And so from the acorn of a relatively minor copyright dispute a mighty oak tree of litigation has resulted – two federal cases, three federal appeals, a state case, and several rounds of sanctions. The copyright dispute involved a case brought by Janky against the Lake County Convention & Visitors Bureau ("LCCVB") for using one of her songs without her permission. Janky prevailed in that case and obtained a $100,000 verdict. But along the way Janky and her attorneys earned themselves thousands of dollars in sanctions for arguing unreasonable legal theories in support of their claims. They also attempted, on repeated occasions, to recover the substantial attorneys fees they believed were owing to them. The presiding judge disagreed, finding the Defendants' claims to be reasonable and non-frivolous.

Undeterred, Janky now comes back for more, filing the present lawsuit against LCCVB, its CEO and Board of Directors, and even their attorneys from the first case. The underlying basis of the new complaint is that the Defendants violated both the United States Constitution and Indiana State tort law by pleading and pursuing certain defenses during the course of that first litigation. Not only are the four separate counts of Janky's newest complaint without merit for failing to state a legal claim; their fundamental assumption - that the defenses asserted in the first case were without basis - was already rejected on multiple occasions. Defendants' Motion to Dismiss is therefore granted, and Janky and her attorneys are ordered to show cause why sanctions should not be issued against them for bringing claims in violation of Rule 11.

## FACTUAL BACKGROUND

**A.** *Janky I*

As mentioned, this is not the first go-around for Janky and Defendants. Janky commenced her first lawsuit – alleging copyright infringement – against LCCVB, Henry Farag, and Street Gold Records on October 3, 2003 in Case No. 3:05-CV-217 ("*Janky I*."). The complaint alleged that Farag, the owner of Street Gold Records and Janky's one-time band-mate, licensed and sold the rights to the song "Wonders of Indiana" to LCCVB without Janky's knowledge. (*Janky I*, Complaint, DE 1, at ¶ 16.) Janky also alleged that LCCVB improperly used the song in its promotional videos and included it as part of a "Doo-Wop" album it sold in its Welcome Center. (*Id.* at ¶ 20.) For their part, Defendants argued the composition was a work-for-hire because Janky was a member of the Farag's band, and therefore the copyright belonged to Farag as the band's manager/producer. (*Janky I*, Pretrial Order, DE 130 at 3.) The LCCVB also argued it was justified in relying on the representations made by Farag that he owned or was otherwise authorized to negotiate the use of the song's recording, since he was

listed as the song's co-author and producer on the album in which it appeared.  (*Id*. at 4.)

The case was initially filed in the Eastern District of Michigan.  It was transferred here to the Northern District of Indiana but not without Magistrate Judge Cherry levying sanctions against Janky for unreasonably maintaining her position that personal jurisdiction of LCCVB was proper in Michigan.  (*Janky I*, DE 149.)  Later, Judge Cherry sanctioned Janky's attorney, Gregory Reed, pursuant to Rule 37(c) for filing a Motion for Impoundment and Injunctive Relief against LCCVB based on allegations that "did not have nor were likely to have evidentiary support." (*Janky I*, DE 187 at 9-10.)  LCCVB has not yet seen that money, owing to Janky's appeal of Judge Cherry's decision on the issue and Mr. Reed's ten-month delay in even satisfying the Rule 62 bond requirement for staying on appeal the enforcement of a sanction order. (Case *Janky I*, DE 340).

On another occasion, sanctions were once again levied, this time by Judge Rodovich against all three of the *Janky I* attorneys – Gregory Reed, Stephanie Hammonds and Francois Nabwangu[1] – for filing a motion to disqualify Judge Cherry under 28 U.S.C. 455, a motion which was filed *after* Judge Cherry had already recused himself from the case.[2]  (*Janky I*, DE

---

[1] While attorneys Reed and Hammonds paid these sanctions in a timely fashion, Mr. Nabwangu did not, and was sanctioned an additional $100.00 per day beginning August 16, 2007 until he paid the outstanding amounts. (*Janky I*, DE 332.)  The amount was increased to $250 per day on April 25, 2008. (*Janky I*, DE 370.)   Nabwangu's Motion for Relief from the sanctions order was denied on August 5th, 2008.  (*Janky I*, DE 379). There is no record that attorney Nabwangu has paid the sums owed for his sanctions, and the amount continues to increase at the rate of $250.00 per day. Mr. Nabwangu signed the complaint for the matter presently before this court. (DE 1 at 8.)  He did not, however, file a motion to appear *Pro Hac Vice*.  The Court, noting this procedural error and Mr. Nabwangu's failure to pay his outstanding fines, ordered his name removed from the docket. (DE 16.)

[2] Judge Cherry recused himself after determining that he would be a witness to an evidentiary dispute relevant to LCCVB's April 2, 2007 Motion for Attorney Fees.  (*Janky I*, DE 280.)  In that motion, LCCVB alleged that during a settlement conference held by Judge Cherry on March 15, 2007, without attorneys present, Ms. Janky revealed that her attorneys had failed to communicate various pre-trial settlement offers which might have caused the litigation to be settled prior to trial. (*Id*.)

149.)

Eventually, Janky prevailed at trial. On March 16, 2007, the jury found that LCCVB did infringe on Janky's copyright of the Wonders of Indiana song and awarded her $100,000. (*Janky I*, DE 229.) [3] Battles quickly ensued after the verdict over motions filed by both parties seeking reconsideration and amendment of the judgment. (*Janky I*, DE 292.) Additional disputes arose over the payment of sanctions and whether they should be set-off against the $100,000 damage award. (*Id*.) Judge Rodovich ordered the amount reduced to $87,701.50 to reflect the amount set-off for sanctions incurred by Janky relating to her improper jurisdictional arguments, but denied Janky's motion to have attorney Reed's sanctions set-off against his client's damage award. (*Id*.).

**B.    Janky's Attacks On Defendants' Pleadings**

Throughout the course of the initial litigation, Janky "took issue" with the Defendants' claims – although "obsessed" is perhaps a more fitting description. During trial, Janky made a Rule 50 oral motion to dismiss the work-for-hire defense as a matter of law, but the motion was denied. (*Janky I*, DE 228). On April 2, 2007, she filed a motion for fees and costs under Section 505 of the Copyright Act, arguing that the Defendants' inclusion of the work-for-hire defense was frivolous and done so only to pressure Janky into settlement. (*Janky I*, DE 252, at 8, 14.) Judge Rodovich denied that request for fees on August 20, 2007, making clear that the defense was reasonable and non-frivolous. (Amended Complaint, Ex. E [DE 11-7], at 12, 14-18). That order was attached as an exhibit to Janky's present complaint. *(Id*.) Unsatisfied, Janky filed a Motion For Reconsideration of the August 20, 2007 Order, arguing that the $100,000 jury award

---

[3] Prior to the trial, the Court had entered an order staying proceedings as to Farag and Street Gold Records, and ultimately dismissed the complaint against them with prejudice on March 20, 2007. (*Janky I*, DE 241).

did not compensate her when taking into account the attorney fees accrued because Defendant "failed to cede" the work-for-hire and their other "frivolous" defenses. (*Janky I*, DE 343, ¶ 4). Judge Rodovich denied this motion as well, noting that Janky misstated the basis for the August 20, 2007 order and only rehashed prior arguments. (*Janky I*, DE 361, at 22-24.)

That order also contained a warning in which Judge Rodovich stated that "any future motions [the parties] may file regarding fee and sanction requests will be closely examined." (*Janky I*, DE 361, at 15.) Despite the warning, Janky went ahead and filed a motion entitled, in its entirety, Plaintiff's Motion for Fees and Costs for Defendants' False and Misleading Representations and Vexatiously Multiplying Court Proceeding Unnecessarily Pursuant to 28 U.S.C. § 1927 Fees. (*Id*, DE 377). Judge Rodovich made short shrift of this motion, denying it on August 5, 2008 and ordering Janky's attorneys to show cause why he should not impose sanctions. (*Id.*, DE 380). Judge Rodovich warned that his "consideration of sanctions will include the recognition that the repeated monetary sanctions that already have been ordered in this matter either have been wholly ineffective or too small." (*Id*. at 2.) That matter is still pending before Judge Rodovich.

## C. Subsequent Litigation

The onslaught of appeals began on June 7, 2007, with LCCVB appealing the denial of its motion for new trial because of allegedly excessive damages. (*Janky I*, DE 282.) On July 19, 2007, Janky appealed the court's decision to have Reed pay his own sanctions. (*Janky I*, DE 305.) On March 7, 2008, LCCVB appealed the denial of its motion for fees and costs. (*Janky I*, DE 362.) The decision denying that motion for fees also denied Janky's own fee request, in which Janky argued that LCCVB's fee request was frivolous. Judge Rodovich appropriately described Janky's motion as being made in "the circular manner that has come to characterize

this case."(*Janky I*, DE 361, at 6.)

Aside from the original litigation and three appeals mentioned above, Janky also filed a state court case in Lake County Circuit Court, Crown Point, Indiana. (Case No. 45C01-0609-PL-400.) Although Farag and Gold Street Records were dismissed with prejudice from the first federal case, they remain a party in the state case. *See* Def. Br. at 7. (*Janky I*, DE 88.) The state case relates to the same set of fact of operative facts as *Janky I*.

After receiving her verdict in federal court, and while appeals were already pending in that case, Janky filed yet another federal complaint – this case – in the Northern District of Indiana. (DE 1.) This newest (and shortly thereafter amended) complaint named not only the LCCVB as a defendant, but also the LCCVB board of directors in their individual capacities; the CEO of LCCVB – Speros Batistatos; and the LCCVB's attorneys – Timothy Jordan, Robert Goldstein, and Daniel Kuzman. (DE 1; DE 11.) Janky now alleges that these defendants committed the tort of abuse of process by asserting their defenses in the earlier case. (DE 11 at ¶ 21.) The complaint tacks on counts alleging violations of the Fifth Amendment and § 1983, as well as a negligence claim, all based on the Defendants' pleadings. (*Id*. at ¶¶ 29-45.) It was this complaint that brought the parties before me.

## DISCUSSION

The minimum requirements for pleading a claim for relief are contained in Rule 8. That Rule requires, in pertinent part, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). Rule 12(b)(6), on the other hand, authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.

Last year the Supreme Court retooled its interpretation of the pleading standards in the

context of a motion to dismiss.  *See Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007).

Prior to *Bell Atlantic* the standard had basically remained static for nearly fifty years.  In *Bell Atlantic*, the Court stated that the "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*. at 1964-65 (brackets omitted).  Instead, the Court held that the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Id*. at 1965.  In so holding, *Bell Atlantic* retired the oft-quoted statement from *Conley v. Gibson*, 355 U.S. 41 (1957), that a complaint survives a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Bell Atlantic*, 127 S.Ct. at 1968 (quoting *Conley*, 355 U.S. at 45-46).  *See also Tamayo*, 526 F.3d 1074, 1082-83 (7th Cir. 2008); *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008).

The Seventh Circuit has cautioned courts not to "overread" *Bell Atlantic*.  *See Limestone*, 520 F.3d at 803.  *See also Tamayo*, 526 F.3d at 1082.  *Bell Atlantic* essentially "impose[s] two easy-to-clear hurdles."  *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).  "First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Id*. (quotation marks and ellipses omitted).  "Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level."  *Id*. (quotation marks omitted).

## A.    Count I - Abuse of Process

Count I of the amended complaint is an abuse of process claim.  Boiled to its essence, Janky's claim is that the defendants abused process by raising a defense in the earlier litigation that Janky believes was spurious. The defendants argue that the doctrine of res judicata, or claim

preclusion, bars Janky's claim for abuse of process. But because there is no identity in the cause of action between this case and the earlier one, res judicata is not a good fit. *See Brzostowski v. Laidlaw Waste Systems, Inc.* 49 F.3d 337, 338 (7th Cir. 1995). This is so because they arise out of a different core of operative facts – the injury addressed in *Janky I* arose from Defendants' copyright infringement, while the source of Janky's alleged injuries for the present complaint is the Defendants' actual pleadings. *See Xantech Corp. v. Ramco Industr., Inc.*, 159 F.3d 1089, 1093 (7th Cir. 1998)(explaining that malicious prosecution claim not barred by res judicata because second suit arose from the earlier litigation itself).

But the doctrine of collateral estoppel, or issue preclusion, does serve to defeat Janky's present abuse of process claim. Courts are permitted to raise collateral estoppel *sua sponte* even when a party fails to do so. *Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir. 1996). Collateral estoppel precludes litigation of an issue if: (1) the issue sought to be precluded is the same as that involved in a prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was represented in the prior action. *Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000).

The first of these conditions requires me to look closely at the elements of an abuse of process claim. To prove abuse of process in Indiana, Janky must show that the Defendants 1) had an ulterior purpose or motive and 2) performed a willful act in the use of process not proper in the regular conduct of the proceeding. *Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1029 (Ind. Ct. App. 2005). *Janky I* disposed of at least one of these elements, and it was done so in the August 20, 2007 order attached as an exhibit to Janky's present complaint. Amended Complaint, Ex. E [DE 11-7]. In that Order, Judge Rodovich denied Janky's Motion for Attorney Fees and Costs Under 17 U.S.C. § 505 and he specifically rejected Janky's argument that the

work-for-hire defense was "frivolous." *Id.* at 14-16. Judge Rodovich said in no uncertain terms that "[t]he court finds that the Bureau's defense of the case as a whole was not frivolous in light of the conflicting evidence and matters of credibility of witnesses' testimony regarding genuine issues of fact which remained for the jury to evaluate." *Id.* at 16. The Judge noted that the Defendants had several strong pieces of evidence to rely on in making their defense and which could have convinced a jury. Those included the fact that Farag made an announcement about the Bureau's song search prior to Janky's creation of the work and that Janky listed Farag as a co-owner/co-author on the face of an early registration. *Id.* Judge Rodovich described the trial as presenting "[g]enuine issues of fact [] regarding a possible license, the potential scope of such license, and the nature and extent of the infringement." *Id* at 12. He also found that there was no evidence of willfulness on the part of Defendants, and that they were not factually or legally unreasonable from an objective point of view. *Id.* at 16-18.

It is difficult to conceive of how a factually and legally reasonable, non-frivolous defense can possibly be made with an ulterior motive or purpose, especially when the Defendants' infringing actions were not found by the jury to be willful. But even if it were possible for such a situation to exist, Judge Rodovich's ruling forecloses Janky from meeting the second element of an abuse of process claim. A party has not used a process improperly if it is "used to accomplish an outcome which the process was designed to accomplish." *Watson*, 822 N.E.2d at 1029. The pleading practice "is designed largely to serve the function of apprising the opposing parties of the nature of the litigation and the claims or defenses that are being raised by the suit." 5 Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1281 (3d ed. 2004). Defendants in *Janky I* did nothing more than help frame the litigation by putting forward their legal arguments; arguments which were reasonable and based in fact. So long as a party's acts are

"procedurally and substantively proper under the circumstances," the intent is of no importance

for an abuse of process claim. *Reichhart v. City of New Haven*, 674 N.E.2d 27, 31 (Ind. Ct. App.

1996). The propriety of Defendants pleadings was challenged, and fully confirmed, by Judge

Rodovich's August 20, 2007 Order. Furthermore, Janky's present complaint is peppered with

allegations that the work-for-hire defense was "frivolous," "malicious," "baseless," and

"fraudulent." Complaint at ¶ 18, 19, 21, 24. Because Janky is precluded by the prior litigation

from asserting these allegations, the foundation on which she builds her abuse of process claim

falls apart.

Nothing in *Xantech* commands a different result. In *Xantech,* the Seventh Circuit

allowed a federal claim for malicious prosecution to go forward, despite a state court's denial of

the plaintiff's request for fees and costs in the earlier case. *Xantech* is distinguishable. Unlike

*Janky I*, the first court in *Xantech* addressed, and denied, a request for fee-shifting under Indiana

law. *Xantech*, 159 F.3d at 109; Ind. Code § 34-1-32-1(b) (current version at Ind. Code § 34-52-

1-1.) That Indiana rule specifically states that an award of fees "does not prevent a prevailing

party from bringing an action against another party for abuse of process..." *Id*. This provision

was a significant factor used in the *Xantech* opinion to reject arguments of collateral estoppel.

*Xantech*, 159 F.3d at 1094. But no such provision exists in the fee shifting rules found in the

Copyright Act, and that is the statute Janky used in *Janky I* to attempt, unsuccessfully, to obtain

fees. *See* Amended Complaint, Ex. E [DE 11-7], at 1.

Second, the *Xantech* court measured the state court's earlier ruling on fees against the

elements for malicious prosecution, not the tort of abuse-of-process. *Xantech*, 159 F.3d at 1094.

Malicious prosecution, which requires a finding of malice and probable cause, is not the same

thing as abuse of process, and a finding against the latter does not preclude the former. *See City*

*of New Haven v. Reichhart*, 748 N.E.2d 374, 378-79 (Ind. 2001)(finding that earlier conclusion that a taxpayer's challenge was "procedurally and substantively proper" so as to defeat an abuse of process claim did not prevent city from bringing a subsequent malicious prosecution suit).

The rest of the requirements for issue preclusion are present.   The issue was actually litigated, with full and extensive briefing addressing not only Janky's initial motion for attorney fees and costs, but then Janky's motion for reconsideration.  *Janky I*, DE 252, 253, 257, 260, 263, 333, 343, 344, 361.  Even though it was not the underlying issue of dispute in *Janky I*, the determination of the fee request was essential to the final judgment.  "For purposes of issue preclusion... 'final judgment' includes any prior adjudication of an issue in another action between the parties that is determined to be sufficiently firm to be accorded conclusive effect." *Miller Brewing Co.*, 605 F.2d 990, 996 (7th Cir. 1979); *see also*, *Denari v. Gensis Ins. Co.,* 2003 WL 22964371 at * 4 (N.D. Ill. Dec. 15, 2003)(finding plaintiff collaterally estopped from seeking fees when he had petitioned for fees and costs in earlier litigation).   Lastly, Janky was fully represented in the prior action.

Janky's abuse of process claim fails for another reason: statements made in pleadings "are absolutely privileged if the statements are pertinent and relevant to the litigation." *Miller v. Reinert*, 839 N.E.2d 731, 735 (Ind. Ct. App. 2005) (citing *American Dry Cleaning & Laundry v. State,* 725 N.E.2d 96, 98 (Ind.Ct.App.2000)). This privilege extends to not just attorneys and judges, but parties and witnesses as well.  *Van Eaton v. Fink*, 697 N.E.2d 490, 494 (Ind. Ct. App. 1998).  Although most typically used as a defense to defamation actions, courts have applied the privilege to abuse of action and negligence claims as well.  *Miller*, 839 N.E.2d at 735; *see also*, *Hawkins v. Webster*, 337 S.E.2d 682, 685 (N.C. Ct. App.1985)*; Nix v. Sawyer*, 466 A.2d 407, 413 (Del. Super.Ct.1983); *Thornton v. Rhoden,* 53 Cal.Rptr. 706 (Cal. Ct. App.1966).  The

privilege is there to protect the freedom of expression necessary during the course of judicial proceedings and so that parties may take part in the adversarial process without fear of resultant lawsuits. *Briggs v. Clinton County Bank & Trust Co.,* 452 N.E.2d 989, 997 (Ind. Ct. App.1983). In fact, the need for this privilege is perfectly illustrated by Janky's present complaint, as it is precisely the sort of retaliatory action and leverage-seeking tactic against which the privilege is designed to protect.

The only circumstance where the privilege does not apply occurs when "the statements are not relevant and pertinent to the litigation or do not bear some relation thereto." *Van Eaton*, 697 N.E.2d at 494. This presents a question of law for the court. *Trotter v. Indiana Waste Sys., Inc.*, 632 N.E.2d 1159, 1162 (Ind. Ct. App. 1994). There is no question that the complained of actions of the Defendants in *Janky I* – the raising of the work for hire defense – was relevant to that litigation. Indeed, Judge Rodovich held in *Janky I* that the work-for-hire defense was reasonable and based in evidence which a jury could have believed. Judge Rodovich's order draws a clear connecting the defense to the facts of the underlying copyright dispute and there can be no doubt that Defendants' defense was related to the litigation at hand.

There is yet another reason (although related to the point just discussed) that the abuse of process claim fails as a matter of law. The traditional abuse of process case involves some type of collateral extortion, and that is what is missing from Janky's claim. *Barrett v. Baylor*, 457 F.2d 119, 122 (7th Cir. 1972)(citing Prosser, Law of Torts, 877-78 (3d ed. 1964)). The Seventh Circuit has held up, as a typical case, the example of suing one's daughter's fiancé to force an end to an engagement. *See Professional Service Network, Inc. v. American Alliance Holding Co.* 238 F.3d 897, 902 (7th Cir. 2001); *see also*, *Sweeney v. Flanagan* 1996 WL 414170, at *1 (7th Cir. July 23, 1996)(stating the "classic example" is "the initiation of a civil proceeding to coerce

the payment of a claim completely unrelated to the cause of action sued upon.")(citing *Triester v. 191 Tenants Assn.,* 415 A.2d 698, 702 (Pa. Super. Ct.1979))

Janky did not allege that Defendants sought any collateral benefits from issuing their defenses, such as the resolution of a separate, unrelated case. Whether Defendants' pleadings put pressure on her during settlement negotiations or harmed Janky's reputation has no bearing on whether process was abused, since the same could be said of the most truthful and well-meaning defense. In sum, there was nothing "collateral" sought by the Defendants in their defense in the earlier case. All they were trying to do was win that case. So the abuse of process claim must be dismissed for this reason as well.

**B.      Count II - Fifth Amendment**

In Count II, Janky alleges that the Defendants conducted an illegal taking of her property, in violation of the Fifth Amendment, through its use of the "Wonders of Indiana" song in its marketing campaign as well as its assertion of frivolous defenses. Janky is precluded from raising the first half of this claim – the Defendants' use of the song – by the doctrine of res judicata. This is an exact overlap of the injury complained of in the copyright infringement claim of *Janky I*, albeit now packaged into a takings claim. *Janky I*, Amended Complaint [DE 48], ¶ 26-32. Nevertheless, it is a matter which arose from the same core of operative facts, there was a final judgment in that action, and there was identity of parties or privies in the two suits. The requirements of res judicata for this aspect of the taking claim are therefore met. *See Brzostowski*, 49 F.3d at 338.

As for the second basis for Janky's taking claim, whether the Defendants undertook a taking by asserting a frivolous defense, this question has already been decided and is therefore barred by collateral estoppel. In her abuse-of-process claim, Janky at least made a half-hearted

attempt to dance around Judge Rodovich's August 20, 2007 order by using terms such as "baseless" and "fraudulent" to describe Defendant's pleadings. In her Fifth Amendment claim, Janky simply states that the defenses were "frivolous," flying directly in the face of Judge Rodovich's order which said that "the court does not feel that the defense rises to the level of frivolousness." Amended Complaint, Ex. E [DE 11-7], at 14. Since the issue of frivolousness is the same as that decided in an earlier litigation which Janky participated in, and the determination of that issue was essential to the final judgment for the same reasons already discussed, Janky is precluded from raising it again in subsequent litigation. *Adair*, 230 F.3d at 893.

Janky's Fifth Amendment takings claim fails as a matter of law anyway. The Takings Clause provides that no "private property [shall] be taken for public use, without just compensation." *Wilkie v. Robbins*, 127 S.Ct. 2588; U.S. Const. Amend V. The assertion of defensive pleadings does not constitute either of the two recognized forms of takings. It is neither the paradigmatic case, defined as a "direct government appropriation or physical invasion of private property," nor was it a "government regulation . . . so onerous that its effect is tantamount to a direct appropriate or ouster." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). It's absurd to suggest that the pleadings in *Janky I* amounted to a direct appropriation of property. In any event, "[t]he mere 'threat' to use the power of eminent domain doesn't constitute a taking and trigger [Fifth Amendment] protections." *Shaikh v. City of Chicago*, 341 F.3d 627, 632 (7th Cir. 2003)(citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 535 U.S. 302, 321-23 (2002)).

There is yet another reasons why Janky's takings claim is going nowhere. The ripeness doctrine requires a plaintiff to go through state procedures first before bringing a constitutional

takings claim. *Williamson County Reg'l Planning Com'n v. Hamilton Bank of Johnson,* 473 U.S. 172, 194-95 (1985). "Because '[n]o constitutional violation occurs until just compensation has been denied' the Supreme Court has crafted a special ripeness doctrine that applies to claims arising under the Takings Clause." *Peters v. Village of Clifton* 498 F.3d 727, 731 (7th Cir. 2007)(quoting *Williamson County*, 473 U.S. at 195 n. 13). Under this doctrine, federal courts may not adjudicate a takings claim unless the plaintiff has demonstrated that 1) she received a final decision from the relevant government entity; and 2) she sought compensation through the procedures the State has provided for doing so. *Daniels v. Area Plan Com'n of Allen County*, 306 F.3d 445, 453 (7th Cir. 2002)(quotations and citations omitted). "We have subject matter jurisdiction over only those takings claims for which the *Williamson County* requirements are satisfied or otherwise excused." *Greenfield Mills, Inc. v. Macklin,* 361 F.3d 934, 957-58 (7th Cir. 2004).

It is true that there is an exception to the *Williamson County* ripeness requirement if the plaintiff can show that seeking state court relief would be futile. *Williamson County*, 473 U.S. at 197; *Daniels*, 306 F.3d at 456. But Janky does not try to show futility. Instead she claims that she is not required to seek state remedies "because the relief she seeks under this count is equitable relief, the unclouded title to her song." Pl.'s Opposition [DE 35], at 9. Presumably, Janky is hoping to take advantage of the *Daniels* case, which suggests that the *Williamson* exhaustion requirements need not be met if equitable relief is the only appropriate remedy but the state does not offer such relief. 306 F.3d at 457-58. But Janky is *not* seeking equitable relief. The statements in her brief stating the contrary are an utter fabrication; her complaint seeks money, not an injunction. Amended Complaint [DE 11], ¶ 29-32.

In sum, for any number of reasons outlined above (as well as others) Janky's takings

claim must be dismissed.

**C.      Count III - § 1983 Action For Deprivation Of Due Process**

Janky also claims that Defendants violated her Due Process by raising a "frivolous defense" and by "stating with malice in several pleadings that it owned the copyrighted song." Amended Complaint [DE 11], ¶ 36.   She brings this claim under 42 U.S.C. § 1983, which is not a source of rights itself, but provides a method for vindicating rights otherwise secured by the U.S. Constitution and other federal laws.  *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103 (1989); *Graham v. Connor*, 490 U.S. 386, 394 (1989). When challenged as to what federal right she was deprived of, Janky says in her response brief that it is the Copyright Act. Pl. Response [DE 35], at 11.  This is a strange answer, because the Copyright Act already allows for a private cause of action, making § 1983 unnecessary.  17 U.S.C. § 501(b).  In addition, § 505 of the Copyright Act already creates an avenue to recover for an opponent's use of frivolous defenses.  *See Gonzales v. Transfer Technologies, Inc.*, 301 F.3d 608, 609 (7th Cir. 2002)(citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535, n. 19 (1994)).  Janky is, of course, well aware of this fact, since she launched her unsuccessful § 505 motion in *Janky I* raising the exact same arguments.

Nevertheless, while Janky's complaint does not actually make mention of the Copyright Act in Count III, it does state that Janky is seeking to use the Due Process clause to protect her property rights, something which is certainly enforceable under § 1983 if she fits the requirements of that claim – which she doesn't.  A § 1983 procedural due process claim requires a plaintiff to show 1) a deprivation of a constitutionally protected liberty or property interest; 2) state action; and 3) constitutionally inadequate process. *Cassidy v. Indiana Dept. of Correction*

16

59 F.Supp.2d 787, 790 (S.D.Ind.1999), aff'd 199 F.3d 374 (7th Cir. 2000).

In this case, Janky alleged that the County's representatives deprived her of her property by damaging her copyrighted song, but she has not identified any inadequate process, which she is required to do to avoid dismissal of her complaint. *Michalowicz v. Village of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). Indeed, Janky had little to complain of with respect to the process made available to her. Her alleged injury stems from the state's participation in her own initiated federal litigation. Federal procedure is, generally speaking, the standard used when determining the quality of process afforded to any particular process. *See Weinstein v. University of Illinois*, 811 F.2d 1091, 1096 (7th Cir. 1987). If there did exist any procedural failures during the trial of her first lawsuit, Janky has her right to appeal which she is presently pursuing.[4] Furthermore, the *Williamson County* exhaustion requirement also applies to due process claims just as it does for takings claims. Janky has not even attempted to show satisfaction with its exhaustion requirements. *See Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 961 (7th Cir. 2004)(citing *Hager v. City of West Peoria,* 84 F.3d 865, 869 (7th Cir.1996)).

In sum, Janky's claim under the Due Process clause are flawed for any number of reasons and must be dismissed.

## D.      Count IV - Negligence

Janky's last claim is for negligence, alleging that Defendants breached their duty by pursuing unsupported claims and filing pleadings to "overwhelm Plaintiff by undue economical means in attempt [sic] to bankrupt Plaintiff." Amended Complaint [DE 11], ¶¶ 40-44. Janky makes further allegations that Defendants had a duty to obtain Janky's consent or clearance to

---

[4] There is obviously no substantive due process claim available to Janky, and she does not argue to the contrary, for nothing that she complains of "shocks the conscience." *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994).

use her copyright.  *Id.*  Examining Janky's somewhat confusing negligence claims, I can immediately dismiss any portion of the negligence count that is based on Defendants' initial copyright infringement, as that was a claim that should have been brought in *Janky I.*

She has also failed to state a claim for negligence relating to the Defendants' pleading in the prior litigation.  For a negligence claim to survive, the plaintiff must allege (among other things) a duty on the defendant's part in relation to the plaintiff.  *Schlotman v. Taza Café*, 868 N.E.2d 518, 521 (Ind. Ct. App. 2007).  In determining whether to impose a duty in a negligence action at common law, a court considers the relationship between the parties, the reasonable foreseeability of harm, and public policy concerns. *Paniaguas v. Endor, Inc*, 847 N.E.2d 967, 970 (Ind. Ct. App. 2006).

The basis of Janky's claim, that Defendants had a duty towards her with respect to their defensive pleadings, is incorrect.  Janky presents no authority for a duty existing between direct litigation opponents when choosing the content of their pleadings.  To the contrary, there is ample caselaw affirmatively concluding that, at the very least, no such duty exists between an attorney and his client's opponent.  *See Keybank Nat. Ass'n v. Shipley*, 846 N.E.2d 290, 300 (Ind. Ct. App. 2006).  Indeed, it has been held that, with respect to the bringing of a suit, "mere negligence is not sufficient to subject an attorney to liability."  *Wong v. Tabor*, 422 N.E.2d 1279, 1285 (Ind. Ct. App. 1981).  Otherwise, there would exist an unacceptable chilling effect, "since only the rare attorney would have the courage to take other than the 'easy case.' *Id*.  This policy consideration, in place for the bringing of a lawsuit, undoubtedly holds for a parties' assertion of defenses as well.  In any event, all the pleadings and motions are protected from any negligence claims because, as discussed in the section on abuse of process, the privilege created for statements made in judicial proceedings applies to protect attorneys and parties from negligence

18

claims as well.  *Miller*, 839 N.E. 2d at 735.

**F.    Sanctions**

Defendants have not filed a separate motion for Rule 11 sanctions, but that rule permits courts on their own initiative to enter an order describing the violative conduct and directing the attorney, law firm or party to show cause why it should not be sanctioned. Here's what Rule 11 says:

[B]y presenting to the court a pleading, written motion, or other paper, an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, — (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Fed. R. Civ. Pro. 11(b).

Every allegation or contention within Janky's present complaint that calls Defendants' *Janky I* pleadings "frivolous," "falsely represented," "baseless," "malicious," "fraudulent," "unsupported," or the like, is evidence of the improper and unwarranted nature of Janky's lawsuit.  *Janky I* [DE 11], at ¶¶ 12, 17, 18, 19, 21, 24, 26, 31, 35, 36, 42, 44.  It was filed in the face of Judge Rodovich's August 20, 2007, Order finding the direct opposite, the denials of successive motions pursuing the exact same line of arguments, the imposition of sanctions in *Janky I* for frivolous motions filed earlier, and the explicit warning by Judge Rodovich in *Janky I* that future filings will be "examined closely."  There was no apparent consideration given to the absolute privilege protecting statements made in pleadings, the exhaustion of state remedies necessary before bringing Fifth Amendment and Due Process claims, or the other problems with

this complaint discussed above.[5]

What's more, the complaint is littered with errors which render numerous paragraphs near nonsense.[6]  Beyond demonstrating poor craftsmanship, these muddled paragraphs are a sign of both the hurried nature of the complaint and the lack of forethought used before its filing. Other paragraphs are simply attempts to reiterate claims of copyright infringement brought in the first suit, with abuse-of-process terms and catchphrases hastily and incoherently added so as to dress it up as a new complaint. [7]  These deficiencies only highlight what was already painfully clear - that Janky and her lawyers are simply trying to have another go at the original lawsuit and obtain the attorneys' fees they felt they deserved.

I am aware of previous litigation involving attorneys Reed and Hammonds in which they

---

[5]  Defendants' Motion to Dismiss carried thirteen separate justifications for dismissal of Janky's claims.  I have only chosen to discuss a handful of them in this opinion.

[6]*See e.g,,* Amended Complaint [DE 11]:

¶ 31: "Lake County's use of the music and lyric's from Janky's "Wonders of Indiana song as a basis for a tourism and marketing campaign deprived Janky of all reasonable economic use of her property and had comparable effect on Janky's ability to make use of her intellectual property (song) as an actual exercise of eminent domain on real property by encumbering Janky's property interest in "Wonders of Indiana" by asserting frivolous defenses in litigation which resulted in a violated of Janky's right to due process."

[7]*See e.g., Janky I*, Amended Complaint [DE 11]:

¶ 25: "Lake County's CEO, Speros Batistatos and Mr. Henry Farag abused the complaint process by selling or leasing property (the composition "Wonders of Indiana"), without a written agreement, but via a handshake agreement, where no composition was provided, and thus no transfer of property was conveyed from Mr. Farag and Lake County. "

¶ 40: "Defendants had a duty to investigate their representations, not to make false representations and to obtain clearance to commercially exploit, market, promote of use Plaintiff's copyright by a written agreement and secure Plaintiff's consent."

were taken to task for disturbingly similar conduct.  And it is proper to examine past litigation conduct to decide whether sanctions should be applied in the present case.  *See Johnson v. C.I.R.,* 289 F.3d 452, 457 (7th Cir. 2002); *Cheek v. Doe*, 828 F.2d 395, 398 (7th Cir. 1987); *Antonelli v. Askew*, 1996 WL 131177 (N.D. Ill. 1996); *Chapman v. Charles Schwab and Co.*, 2002 WL 818300 (N.D. Ill. 2002); *Portnoy v. Wherehouse Entertainment*, 120 F.R.D. 73, 74-75 (N.D. Ill. 1988).

First, in *EB-Bran Productions, Inc. v. Warner Elektra Atlantic, Inc.*, 2006 WL 932085 (E.D. Mich April 10, 2006), Reed and Hammond were sanctioned over $40,000 for bringing complaints and other motions in violation of rule 11(b)(2) against Robert "Kid Rock" Ritchie and various record companies.  Their complaint, brought after the termination of their counterclaims in a previous copyright infringement lawsuit involving the same transactions and underlying facts, alleged various state law claims that were ultimately dismissed because of claim and issue preclusion.  *Id.* at *2-4.  The court held that claims and allegations in the complaint and subsequent filings were "were not warranted by existing law or by nonfrivolous arguments." *Id.* at *6; Fed R. Civ. P. 11(c)(2)(A).

In a different case, *Fharmacy Records v. Simmons*, 2006 WL 156669, at *3, (E.D. Mich. Jan. 20, 2006), Gregory Reed brought another complaint combining copyright infringement with state law claims, this time against rapper Earl "DMX" Simmons and other music industry defendants.   The court awarded Defendants costs under 28 U.S.C. § 1927 after finding that the state law claims were "baseless" and that the plaintiff tried to support them with "nonsensical arguments," that Mr. Reed should have known were frivolous after losing similar arguments in court.  In a later order, by which time Ms. Hammonds had appeared at Mr. Reed's side, the court

granted dismissal of the case as a sanction for gross discovery abuses performed by Reed, including the loss of key evidence, the intentional erasing of computer files, the manipulation of electronic data, and the misrepresentation of important date information. *Fharmacy Records v. Nassar*, 248 F.R.D. 507, 530 (E.D. Mich. March 31, 2008). The court punctuated its findings with the following statement: "It must be emphasized that this is not a case involving mere gamesmanship or garden variety discovery abuses. The actions of the plaintiffs and their attorney in this case are so egregious that they have forfeited their right to proceed in court. The plaintiffs clearly have no respect for the civil justice system, and it would be unfair to require the defendants to defend this case any further." *Id*.

There are other examples of these lawyers mis-using the litigation process. *See Fharmacy Records v. Nassar*, 2008 WL 3869848, at * 5 (E.D. Mich. Aug. 15, 2008)(characterizing Reed and Hammonds' argument as "feckless" and irresponsible" in which they suggested the judge's attendance at Notre Dame fostered an unfair bias, because Reed litigated against other Notre Dame attorneys in a prior litigation); *Coleman v. Horton*, 2006 WL 986955 (E.D. Mich. April 12, 2006)(dismissing a Gregory Reed lawsuit "which essentially reasserted the same claims that had been addressed and were ultimately rejected" in a previous suit, and thereafter a motion for reconsideration which "reargue[d] the very same points."); *Reed v. Davies*, 2004 WL 442860, at *6 (Mich. Ct. App. March 11, 2004)(affirming sanctions against Reed for bringing claim in order to harass defendants). In the face of these examples of litigation abuse by Janky's attorneys, it makes her claim of abuse of process particularly audacious.

It would seem that Janky's attorneys have exhausted the patience of courts in Michigan and are now moving their operations to Indiana. I believe DMX, one of the many litigation

opponents victimized by Reed and Hammonds, said it best: "Ya'll gonna make me lose my mind . . . Ya'll gonna make me lose my cool!" DMX, Party Up, on ...AND THEN THERE WAS X (UMG Recordings, Inc. 1999). Accordingly, Janky and her attorneys are ordered to show cause why sanctions should not be imposed under Rule 11(b) for the actions enumerated above and in light of the long history of similar abuses.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [DE 12] is **GRANTED** with prejudice. In addition, Janky and her attorneys Gregory Reed and Stephanie Hammonds are ordered to show cause on or before October 27, 2008 why sanctions should not be imposed under Rule 11(b) for the actions enumerated above.

**SO ORDERED.**

ENTERED: September 25, 2008

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT