# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | |
|---|---|
| CHERYL JANKY,                         ) | |
|                           ) | |
|         Plaintiff,             ) | |
| v.                                 ) | |
|                           ) | NO. 2:07-CV-339 PPS APR |
| SPEROS BATISTATOS, LAKE COUNTY   ) | |
| CONVENTION & VISITORS BUREAU,    ) | |
| and its BOARD OF DIRECTORS,       ) | |
| Individually, Jointly, and Severally and   ) | |
| ATTORNEYS TIMOTHY JORDAN,      ) | |
| ROBERT GOLDSTEIN, DANIEL        ) | |
| KUZMAN and Agents known and unknown, ) | |
| JOHN DOES, Jointly and Severally,     ) | |
|                           ) | |
|         Defendants.          ) | |
|                           ) | |

## MEMORANDUM OPINION ORDER

The issue before the Court is whether attorneys Gregory Reed and Stephanie L. Hammonds (together, "Respondents") should be sanctioned under Rule 11 for their filing a spurious complaint in this case. The complaint named Cheryl Janky as the plaintiff and was brought against the Lake County Convention & Visitors Bureau ("LCCVB"), its Board of Directors, its CEO Speros Batistatos, and its attorneys Timothy Jordan, Robert Goldstein, and Daniel Kuzman. The complaint was based on claims those Defendants asserted when defending an earlier federal copyright lawsuit, also brought by Janky. The main thrust of this second lawsuit was that the defenses used in the first case were frivolous and groundless. In fact, there was no basis for Janky's second lawsuit, as it had been established in the initial litigation that the defenses were grounded in fact and credible evidence, and were held by the judge in that case to

1

not be frivolous. After dismissing the complaint before me, I *sua sponte* ordered Respondents to show cause why they should not be sanctioned for violating Rule 11(b) of the Federal Rules of Civil Procedure. Because they failed to show that the claims included in the second lawsuit were warranted by existing law or by a nonfrivolous argument, or that the suit was brought for a proper purpose, sanctions will be imposed.

## BACKGROUND

The procedural history underlying the dispute between these parties is extensive, but at its core, it's a fight over ownership of a song. Janky wrote a song called "Wonders of Indiana" and had it copyrighted. The song was later used by the LCCVB without Janky's permission in promotional videos and albums sold at its Welcome Center which prompted Janky to sue LCCVB in this court in Case No. 3:05-CV-217 ("*Janky I*"). By consent of the parties, *Janky I* proceeded before the magistrate judge, first Magistrate Judge Cherry and then Magistrate Judge Rodovich.[1]

In defense of the lawsuit, the LCCVB asserted a "work for hire" defense. It claimed that the song was written in response to an announcement from one of Janky's band mates, Henry Farag, who had notified the band as to what the LCCVB was looking for in a promotional song. (*Janky I*, DE 333 at 2.) The LCCVB also claimed it was justified in relying on Farag's representations that he was in a position to negotiate the use of the song, since he was listed as the song's co-author and producer on the album in which it appeared. (*Janky I*, DE 130 at 4.)

*Janky I* got off to a rocky start. Towards the beginning of the case, Judge Cherry sanctioned Janky for unreasonably maintaining the position that personal jurisdiction of LCCVB

---

[1] Judge Cherry recused himself after determining that he would be a witness to an evidentiary dispute over the events transpiring during a March 15, 2007 settlement conference held without attorneys present. (*Janky 1,* DE 280.) Judge Rodovich took over as presiding judge. (*Janky 1*, DE 281.)

was proper in Michigan, where the case was originally brought. (*Janky I*, DE 149.) Judge

Cherry later sanctioned Reed for filing a motion that did not have evidentiary support. (*Janky I*,

DE 187 at 9-10.) Additionally, Janky's attorneys were sanctioned by Judge Rodovich for filing a

motion to disqualify Judge Cherry under 28 U.S.C. 455 *after* he had already recused himself

from the case. (*Janky 1*, DE 314, DE 323.).

Janky prevailed at trial, with the jury finding that LCCVB did infringe on her copyright

and awarding her $100,000. (*Janky I*, DE 229.) While Janky did win, it was established at

different points throughout *Janky 1* that LCCVB's work for hire defense was not frivolous.

Instead, the matter came down to a reasonably close question of fact to be decided by the jury.

In the first of these instances, Respondents made a Rule 50 motion to dismiss the work for hire

defense as a matter of law. (*Janky I*, DE 228.) Judge Cherry denied the motion, which should

have been Respondents' first clue that the defense had a colorable basis. (*Id*.). Judge Rodovich

later agreed with Judge Cherry when he denied Respondents' Motion for Fees pursuant to 17

U.S.C. § 505 of the Copyright Act. (*Janky I*, DE 333 at 14-17.) In that opinion, Judge Rodovich

applied the "*Fogerty* factors," used to determine whether the prevailing party in a copyright case

is entitled to attorneys' fees. (*Id*. at 10-19.) One of those factors asks whether an opposing

party's defenses and claims were frivolous, and Judge Rodovich determined that Defendants'

claims were not.[2] (*Id*.) Respondents then filed a motion for reconsideration, which Judge

---

[2]The Supreme Court, in *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 536 n. 19 (1994), set forth a nonexclusive list of factors for courts to apply when determining the question of fees in a copyright dispute. Other factors include motivation, objective unreasonableness and the need in particular circumstances to advance consideration of compensation and deterrence. *Id.* Judge Rodovich examined all of these factors in his August 20, 2007 Order, as well as, consistent with the Seventh Circuit's opinion in *Assessment Technologies of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 436 (7th Cir. 2004), the strength of the prevailing party's case and the amount of damages or other relief the party obtained. (*Janky I*, DE 333 at 10-19.) Judge Rodovich also took into account the Seventh Circuit's guidance that while a prevailing copyright defendant typically receives no award and is therefore entitled to a strong presumption for fees, a prevailing plaintiff who does receive a large damage award does not receive the

Rodovich also denied, reaffirming his conclusion that the defenses were not frivolous. (*Janky 1,* DE 361, at 24-26.)

Judge Rodovich also warned both parties – in the strongest terms and on multiple occasions – to cease their frenetic pursuit of fees. (*Id.*) Not only did Respondents file the previously mentioned Section 505 motion, but they also made a request for fees for having to respond to LCCVB's own fee request pursuant to 28 U.S.C. § 1927, with Respondents claiming the LCCVB motion was frivolous. (*Janky I,* DE 256.) Judge Rodovich denied both parties, appropriately describing Janky's motion as being made in "the circular manner that has come to characterize this case." (*Janky I*, DE 361, at 6.) Respondents later filed yet another motion under 28 U.S.C. § 1927 based upon a belief that Defendants should have settled the case years before it ever reached trial. (*Janky I*, DE 377.) This motion was denied as well. (*Janky I*, DE 380.) Because the parties were previously advised that future fee and sanction requests would be "closely examined," Judge Rodovich also ordered Respondents to show cause why they should not be sanctioned. (*Id.*) The Response to that order has been submitted and is currently under advisement.

Various appeals were filed in *Janky I,* none of which have been resolved. In its notices of appeal, LCCVB's challenged the denial of its motion for new trial (*Janky I*, DE 282) and one of its motions for fees and costs (*Janky I*, DE 362). For her part, Janky challenges Judge Rodovich's order that the sanctions imposed by Judge Cherry against attorney Reed could not be set-off against Janky's $100,000 jury award. (*Janky I*, DE 305.) Reed had hoped to reach a result similar to that permitted for Janky herself. Recall that Janky was sanctioned roughly $12,300 pursuant to Rule 37(c) relating to her continued assertion of an improper jurisdictional

same presumption. (*Id.* at 13 (citing *Woodhaven Homes & Realty, Inc. v.* Hotz, 396 F.3d 822, 823 (7th Cir. 2005); *Assessment Technologies*, 361 F.3d at 437)).

argument, and this amount was set-off against her $100,000 damages award. (*Janky 1*, DE 292 at 2.) Judge Rodovich denied Reed's request to set-off his own Rule 11(b)(2) sanctions against his client's damages award. (*Id*.)

Aside from the original litigation and three appeals mentioned above, Janky also filed a state court case in Lake County Circuit Court, Crown Point, Indiana. (Case No. 45C01-0609-PL-400) against the LCCVB, its CEO Speros Batistatos, as well as Farag and his record company Street Gold Records. Remarkably, the state case relates to the same set of operative facts as *Janky I* and is still pending.

All of which brings us to the circumstances surrounding Respondents' filing of the complaint in this case. Despite winning the $100,000 jury award in *Janky I*, this success was tempered not only by the risks posed from pending appeals, but by the undoubtedly large total of attorney fees accrued for what should have been a relatively straightforward case. Prior to trial, Respondents had already racked up over $90,000 worth of fees from June 2003 to April 1, 2006 in litigating *Janky I*. (*Janky I*, DE 377-8 at 3.) Those fees could only have mushroomed during trial and with the bevy of post-trial activity. So Respondents were faced with a steep legal fee that the jury award was unlikely to cover and which the Judge had ruled could not be used as set-off for attorney sanctions. Actually, there was even less money available from the damage award, since it was already reduced to $87,701.50 to reflect the amount set-off for earlier sanctions incurred by Janky. (*Janky I*, DE 292.) As discussed, Respondents were unsuccessful in their several motions for fees in *Janky I*. Having dug themselves into quite a hole, it's possible Respondents felt they had nothing to lose by firing off another complaint. And that's just what they did.

The complaint, which was later amended, was brought against not only LCCVB and its

CEO Batistatos, but the lawyers who represented them in *Janky I*. It is built upon the general idea that the Defendants unreasonably and without any basis asserted the work for hire defense in *Janky I*. (Amended Complaint, DE 11, ¶¶ 12-15, 17, 18.). With this as its flimsy basis, a scattershot of legal theories were spawned: Count I is an abuse of process tort claim based upon the Defendants' "false allegations in its pleadings," "baseless claims of a 'work for hire,'" and their "fraudently [sic] stating that Ms. Janky was a 'work for hire' employee in their pleadings." (*Id.*, ¶¶ 21, 24.) Count II says those "frivolous" defenses represented a Fifth Amendment taking without just compensation. (*Id.*, ¶¶ 30, 31.) Count III asserted a violation of 42 U.S.C. § 1983 for Deprivation of Due Process and Property Rights, claiming the "frivolous defense" denied her the right to use her song and make profit. (*Id.*, ¶¶ 36, 37.) In Count IV, Respondents asserted a negligence claim for Defendants' alleged false representations and pursuit of "unsupported claims court [sic] without obtaining Plaintiff's consent or clearance." (*Id.*, ¶¶ 40-44.)

I dismissed the amended complaint for various reasons, and pursuant to Rule 11, I also ordered Respondents*, sua sponte*, to show cause why they should not be sanctioned for filing their complaint. (Sept. 25, 2008 Order, DE 37.) (*Id.* at 19-23.) As reasons for the proposed sanctions, the order identified Respondents' refusal to acknowledge the preclusive effect of the *Janky I* rulings, their failure to account for the principles of privilege which served to protect Defendants' pleadings, as well as their failure to satisfy the ripeness and exhaustion doctrines which called for them to take additional steps before ever bringing their claims in federal court. (*Id.*) I also took note of the many grammatical and spelling errors which rendered their complaint and briefs nearly indecipherable, and their lengthy history of past sanctions for similarly harassing and redundant legal actions. (*Id.*)

The written responses ignited by the Order to Show Cause fell into a state of ridiculous

disarray which would be surprising were it not so characteristic of both sides' already established behavior. The Defendants took issue with statements made in the initial Response to Order to Show Cause and said so in their Reply, which prompted Respondents to submit a Motion to Strike the Defendants' Reply. (Def.'s Reply, DE 42; Mot. to Strike, DE 43.) Defendants responded to that, and then filed their own Rule 11 Motion for Costs and Fees based upon statements made in the Response to Order to Show Cause and the Motion to Strike. (Def.'s Resp. to Mot. to Strike, DE 45; Def.'s Mot. for Costs, DE 46.) Respondents' answered that motion by, of course, asking for their own award of costs and fees. (Pl.'s Resp. to Mot. for Costs, DE 50.)

## DISCUSSION

Rule 11 of the Federal Rules of Civil Procedure authorizes sanctions against a party or attorney who files frivolous pleadings, files pleadings for an improper purpose such as to harass, or makes allegations that they know have no basis in law or fact. A court may impose sanctions for a violation of Rule 11 either upon a party's motion or on its own initiative. Fed.R.Civ.P. 11(c). The purpose of Rule 11 is to deter baseless filings in the district court. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). In determining whether Rule 11 sanctions are warranted, the Court must "undertake an objective inquiry into whether the party or his counsel should have known that his position was groundless." *Cuna Mut. Ins. Soc. v. Office and Prof'l Employees Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006)(quoting *CNPA v. Chicago Web Printing Pressmen's Union No. 7*, 821 F.2d 390, 397 (7th Cir. 1987)).

Janky and her counsel apparently became convinced that Defendant's arguments were bogus. But they were informed, many times, that this wasn't the case. In the face of those multiple orders, not to mention sanctions and explicit warnings against future fee and sanctions

requests, Respondents launched yet another complaint built entirely on the claim that Defendant's arguments in *Janky I* were baseless and frivolous. For Respondents to say, after all previous rulings to the contrary, that the defenses were without basis is, itself, a groundless statement. "[A] paper filed in the best of faith, by a lawyer convinced of the justice of his client's cause, is sanctionable if counsel neglected to make 'reasonable inquiry' beforehand." *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 918, 932 (7th Cir. 1989). Respondents not only failed to make a reasonable inquiry into the relevant areas of law, but apparently failed to even read (or certainly take heed of) the orders issued in *Janky I.*

Respondents' answer to the Order to Show Cause did them no favors. One short paragraph appearing in that brief epitomizes the problem. They begin by conceding that Judge Rodovich found "that the Bureau's defense of the case as a whole was not frivolous in light of the conflicting evidence and matters of credibility of witnesses' testimony regarding genuine issues of fact which remained for the jury to evaluate." Response to Order to Show Cause [DE 40] at 8 (citing Aug. 20, 2007 Order [*Janky I,* DE 333] at 16). Yet in the last sentence of the very same paragraph, Respondents insist that the evidence relied upon by Defendants in *Janky I* was "insufficient to overcome Plaintiffs' [sic] claim against Defendants for raising frivolous defenses of joint authorship and work-for-hire defenses." In other words, their core argument is that even though Judge Rodovich made findings in *Janky I* pertaining to the frivolousness of the Bureau's defense, those findings were incorrect. Maybe they were – though it strikes me as unlikely. But the proper avenues in which to complain about those findings are a motion for reconsideration or through an appeal. Of course, Janky tried the former and lost, prompting Judge Rodovich to once again state that the *Janky I* defense was not frivolous. (*Janky 1* DE 361 at 24-26.) Respondents have filed one appeal, but not against the orders discussing the

8

reasonableness of Defendants' claims, only against the orders denying Reed's attempt to set-off his sanctions from the jury award. (*See Janky 1,* DE 305.) In either event, what was decidedly ***not*** the correct course of action was to file a new and separate lawsuit based upon the same exact arguments made in the previously unsuccessful motion for fees.

In their Response to the Order to Show Cause, Respondents did not bother to address the extensive procedural history lined up against them. *See* Sept. 25, 2008 Order [DE 40] at 4-5. And despite a careful articulation of the problem that I saw with their handling of this litigation, Respondents claim confusion as to which "denials of successive motions pursuing the exact same line of arguments," I could have been talking about. *See* Response to Order to Show Cause [DE 40] at 11-12. The order attempted to make clear that the parade of orders in *Janky I,* including the denial of their Rule 50 motion, the August 20, 2007 denial of fees, and the denial of their motion for reconsideration, were seen as evidence that "Janky and her lawyers are simply trying to have another go at the original lawsuit and obtain the attorneys' fees they felt they deserved." *See id*. at 4-5, 19-20.

The only prior order they did respond to was Judge Rodovich's from August 20, 2007. Respondents insist that his use of the term "frivolousness" in that order was limited to its application towards Section 505 of the Copyright Act and not useful for the purposes of their new lawsuit asserting abuse of process, Fifth Amendment, Section 1983, and negligence claims. But they do not provide any basis or reason for a distinction between the determination of "frivolousness" in a copyright fees motion and "frivolousness" as used for any other purpose.

A claim is frivolous if the probability of success is very low, *Maxwell v. KPMG LLP*, 520 F.3d 713, 719 (7th Cir. 2008), or one "that no reasonable person could suppose to have any merit," *Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000). The word "frivolous" carries the

same meaning from one rule to the next, and it does not take on any sort of especially limited role in Section 505 motions. The Seventh Circuit, for example, recently determined a suit to be frivolous in the context of a Section 505 motion, but cited, as support for its own use of the term, to cases using Rule 11 of the Federal Rules of Civil Procedure and Rule 38 of the Federal Rules of Appellate Procedure. *See Eagle Services Corp. v. H20 Industrial Services, Inc.*, 532 F.3d 620, 623 (7th Cir. 2008)(citing *Durr v. Intercounty Title Co.,* 14 F.3d 1183, 1188 (7th Cir.1994)(Rule 11); *Devices for Medicine, Inc. v. Boehl*, 822 F.2d 1062, 1068-69 (Fed. Cir. 1987)(Rule 38); *Olympia Co. v. Celotex Corp.*, 771 F.2d 888, 893 (5th Cir. 1985)). And although fees may be awarded under Section 505 for reasons other than frivolousness, *see JCW Investments, Inc. v. Novelty, Inc.*, 509 F.3d 339, 342 (7th Cir. 2007), Judge Rodovich specifically addressed whether the *Janky I* defenses were frivolous and decided they were not.

As the Seventh Circuit did in *Eagle Services*, Judge Rodovich relied on cases which drew on Rule 11 analysis to determine frivolousness under Section 505. *See NLFC, Inc. v. Devcom Mid-America, Inc.*, 916 F.Supp. 751, 758 (N.D. Ill. 1996)(awarding fees after finding plaintiff's complaint was "clearly violative" of Rule 11 for failing to perform reasonable investigation into copyright infringement claims); Aug. 20, 2007 Order [*Janky I*, DE 333] at 16. Respondents' own motion asked Judge Rodovich to decide whether the defenses and claims were "objectively unreasonable," thus belying their present stance that frivolousness under Section 505 is irrelevant to their second suit challenging not just the reasonableness but the existence of a very basis for those claims. *See* Motion for Fees and Costs Under Section 505 [DE 252] at 5. There is simply no support for their suggestion that there existed an unspoken distinction in Judge Rodovich's mind between "frivolousness" as it is commonly understood and "frivolousness" as it is used for purposes of Section 505 motions.

Respondents attempted to hide the ball in their Response by pointing out all of the

aspects of the Amended Complaint which were not objectionable, as opposed to addressing the portions of those paragraphs which prompted the Rule 11 proceedings in the first place. The Show Cause order asked them to explain the several instances found in Janky's Amended Complaint where they used terms such as "frivolous," "falsely represented," "baseless," "malicious," "fraudulent," and "unsupported" in describing LCCVB's defense – all of which directly conflicted with several orders from *Janky I*. *See* Sept. 25, 2008 Order [DE 37] at 19. For example, Paragraph 17 of the Amended Complaint stated that "Defendants asserted a 'work for hire' theory without any basis or writing to deprive Janky of her song and copyright." Amended Complaint [DE 11], ¶ 17. They attempted to defend this in their Response by stating that there were in fact no written agreements regarding the use of Janky's song. *See* Response to Order to Show Cause [DE 40] at 9. But to call the work for hire defense "baseless" ignores one of the very points made by Judge Rodovich in finding it nonfrivolous – that the song might have been created in response to an announcement Farag made about the LCCVB's search for a song to represent Lake County. Aug. 20, 2007 Order [*Janky I*, DE 333] at 16. Simply put, the question of whether there was a "basis" for this proposition was settled in *Janky I*, and any relief from those orders should have been made through the appellate process.

Similarly, in Paragraph 24, Janky asserted that Defendants "abused the complaint process by fraudently [sic] stating that Ms. Janky was a 'work for hire employee' in their pleadings thereby indicating or stating that Ms. Janky is not entitled to damages under the 'Copyright Act.'" Amended Complaint [DE 11], ¶ 24. In their Response to the Show Cause order, Respondents ignore their explicit fraud allegation. *See* Response to Order to Show Cause [DE 40] at 9. Fraud requires a knowing misrepresentation, and as Judge Rodovich's orders established, the work for hire defense was based on credible evidence. So Respondents' charge that the work for hire defense was made "fraudulently" is contradicted by the findings of *Janky I*.

Paragraph 31 of the Amended Complaint puts forward a Fifth Amendment claim, stating that the Defendants' assertion of "frivolous defenses in litigation" resulted in an illegal taking of Janky's property interest in the Wonders of Indiana song. In their defense of Paragraph 31, Respondents claim there is nothing in the August 20, 2007 order which directly or indirectly contradicts their allegation. Response to Order to Show Cause [DE 40] at 10. This is a remarkable conclusion considering Judge Rodovich emphatically held that the defense was "***not frivolous***" and Paragraph 31 of the Amended Complaint alleges a constitutional violation because of the assertion of a frivolous defense.

I could go on, but the point is made. The dismissed complaint repeated over and over again accusations that were just not possible under the findings made in *Janky I*. The complaint is littered with the words "frivolous," "falsely represented," "baseless," "malicious," "fraudulent," and "unsupported." *See* Amended Complaint [DE 11], ¶¶ 12, 17, 18, 19, 21, 24, 26, 31, 35, 36, 42, 44. This renders the complaint unwarranted under existing law and therefore sanctionable under Rule 11.

Semantics aside, what matters is the reasons why Judge Rodovich found the *Janky I* defenses to be nonfrivolous, and those reasons were that the claims were rational, based on sound law and credible evidence, and because a jury could have been convinced as to their merits. Aug. 20, 2007 Order [*Janky 1*, DE 333] at 14-18**.** The fact that they were ultimately rejected by the jury in *Janky I* is neither here nor there. Respondents have utterly failed to explain why Defendant's *Janky I* arguments were an abuse of process, a constitutional violation, or a negligent action in light of Judge Rodovich's rulings.

As for the specific claims, Judge Rodovich's careful explanations made during *Janky I* foreclosed any possible abuse of process claim. He stated that the defense as a whole was not frivolous because of "conflicting evidence and matters of credibility of witnesses' testimony

regarding genuine issues of fact which remained for the jury to evaluate." Aug. 20, 2007 Order [*Janky I*, DE 333] at 16. As discussed in my order dismissing Janky's abuse of process claim, pleadings are designed to give the opposing party notice of the nature of the litigation and the defenses and claims that are being raised in the suit. *See* Sept. 25, 2008 Order [DE 37] at 9 (citing 5 Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1281 (3d ed.2004)). One necessary element of an Indiana abuse of process claim is the performance of a willful act in the use of process not proper in the regular conduct of the proceeding. *Watson v. Auto Advisors, Inc.,* 822 N.E.2d 1017, 1029 (Ind. Ct. App. 2005). Process is not abused if it is "used to accomplish an outcome which the process was designed to accomplish." *Id.* Since Defendants' *Janky I* claims were reasonable in law and based in fact, they were undeniably used to notify Janky of the Defendants' claims, and therefore, a proper use of defensive pleadings.

A reasonable investigation also would have caused Respondents to discover that the abuse of process claim was groundless because statements made in pleadings "are absolutely privileged if the statements are pertinent and relevant to the litigation." *Miller v. Reinert*, 839 N.E.2d 731, 735 (Ind. Ct. App. 2005) (citing *American Dry Cleaning & Laundry v. State*, 725 N.E.2d 96, 98 (Ind. Ct. App. 2000). This was explained to Respondents in the order dismissing the suit. Sept. 25, 2008 Order [DE 37] at 11. Yet in their Response, they argue that the cases cited in the opinion are from outside of Indiana, and therefore inapposite. This statement is perfectly false. *Miller v. Reinert*, the first case cited to in my opinion regarding the topic of absolute privilege of pleadings, is an Indiana case. *Id.* at 11. It held that the privilege applied in a case where an ex-wife and her lawyer made statements in an appellate brief in a prior case. *Miller*, 839 N.E.2d at 735-36.

Their Fifth Amendment takings clause and Section 1983 due process claims, as explained in the dismissal order, were also subject to the obvious effects of issue and claim preclusion from

13

*Janky I. See* Sept. 25, 2008 Order at 13, 14, 16. In these claims, Janky not only sought damages for the assertion of a "frivolous defense," but also sought relief for the Defendant's use of the song itself. Of course, this was the very issue at the heart of the *Janky I* copyright dispute, and so should have been raised in the original suit. Because it was not, they were prevented by res judicata from bringing the claim in a subsequent case. *Id*.

In addition, the Fifth Amendment and Section 1983 claims were subject to exhaustion requirements, to which Respondents apparently took no notice of and paid no heed. The doctrine set forth in *Williamson County Reg'l Planning Com'n v. Hamilton Bank of Johnson* requires a plaintiff to receive a final decision from the relevant government entity and to seek compensation under available state court procedures before requesting relief from federal courts. 473 U.S. 172, 194-95 (1985); *see also*, *Greenfield Mills, Inc. v. Macklin,* 361 F.3d 934, 957-58 (7th Cir.2004) (applying requirements to due process claim). Respondents merely suggest that they "gave adequate consideration to the exhaustion of state remedies." Response to Order to Show Cause [DE 40] at 18. They then say that to the extent the Court finds this consideration insufficient, they seek leave to amend their complaint. *Id*. The request is extraordinary and utterly galling. That ship has sailed; the complaint was dismissed with prejudice, and the Respondents had not sought leave to amend or moved for reconsideration of the dismissal order.

In considering Rule 11 sanctions, it's proper to review Respondents' history of litigation abuse and sanctions. *See Johnson v. C.I.R.,* 289 F.3d 452, 457 (7th Cir.2002)("The Tax Court was not required to ignore Izen's bad conduct in other cases; indeed it would have been remiss not to consider it."). *See also*, *Cheek v. Doe,* 828 F.2d 395, 398 (7th Cir.1987); *Chapman v. Charles Schwab and Co.,* 2002 WL 818300 (N.D.Ill.2002); *Antonelli v. Askew,* 1996 WL 131177 (N.D.Ill.1996); *Portnoy v. Wherehouse Entertainment,* 120 F.R.D. 73, 74-75 (N.D.Ill.1988). Although *Thibeault v. Square D Co.*, 960 F.2d 239, 246 n. 6 (1st Cir. 1992), cited

14

by Respondents, notes that a lawyer's behavior in previous cases is just "one of many factors to be considered" when determining sanctions, the First Circuit also said in that opinion that it would be "blinking reality in not taking counsel's proven propensities into account."  The *Thibeault* opinion, despite being raised by Respondents, is actually strong support for the inclusion of their litigation history in my Rule 11 analysis.

In the September 25, 2008 Order, I noted multiple cases involving attorneys Reed and/or Hammonds which prompted sanctions and disciplinary measures for them or their clients.  Sept. 25, 2008 Order [DE 37] at 21-22 (citing *EB-Bran Productions, inc. v. Warner Elektra Atlantic, Inc.*, 2006 WL 932085 (E.D. Mich April 10, 2006); *Fharmacy Records v Simmons*, 2006 WL 156669 (E.D. Mich Jan. 20, 2006); *Fharmacy Records v Simmons*, 248 F.R.D. 507 (E.D. Mich. March 31, 2008); *Coleman v. Horton*, 2006 WL 986955 (E.D. Mich. April 12, 2006); *Reed v. Davies*, 2004 WL 442860 (Mich. Ct. App. March 11, 2004)).   In the first, *EB-Bran Productions*, the judge imposed sanctions on Reed and Hammonds because of facts remarkably similar to what happened here.  In that case, Reed and Hammonds brought a secondary complaint after a previous copyright infringement suit.  *EB-Bran Productions*, 2006 WL 932085, at * 2.  This secondary suit was dismissed because of claim and issue preclusion, and sanctions were ordered because the complaint and subsequent filings "were not warranted by existing law or by nonfrivolous arguments." *Id*. at ** 4, 6. Respondents do not deny that Reed and Hammonds were sanctioned over $40,000 pursuant to Rule 11 nor do they to explain how their behavior was in any way different from what they tried to pull in this case.

Similarly, the judge in *Fharmacy Records* awarded costs and fees for "baseless" state law claims that attorney Reed attempted to support with arguments which he should have known were "nonsensical" based on previously failed attempts at using them. 2006 WL 156669, at * 3. The court later dismissed the entire case, at that point advocated by both Reed and Hammonds,

for "egregious" discovery abuses. *Fharmacy Records v. Nassar*, 248 F.R.D. 507, 530  (E.D. Mich. 2008)  The court remarked, "[i]f this is not bad-faith litigation, nothing is."  *Id*. Respondents only say that the costs and fees award in the *Fharmacy Records* matter are currently being challenged on appeal, but they do not attempt to explain what the merits of that appeal might be.  Response to Order to Show Cause [DE 40] at 15.

In *Coleman*, a Reed suit was dismissed "which essentially reasserted the same claims that had been addressed and were ultimately rejected in a previous suit," and thereafter a motion for reconsideration which "reargue[d] the very same points."  2006 WL 986955 at * 1.  Respondents stress that this case involved a dismissal, and not sanctions, but do not challenge the fact that it was a measure taken as a result of Reed's assertion of redundant claims. Response to Order to Show Cause [DE 40] at 15.  They also concede that the fourth case mentioned in the September 25, 2008 Order, *Reed v. Davies*, 2004 WL 442860 at *6, resulted in sanctions against Reed for bringing a claim in order to harass defendants. Response to Order to Show Cause [DE 40] at 15.

Respondents say that this history of sanctions "does not establish a pattern of litigation misconduct."  Response to Order to Show Cause [DE 40] at 15.  But a pattern of misconduct is precisely what I see.  Attorney sanctions are a rare enough event that the presence of even one would be a source of concern.  But Reed and Hammonds have been sanctioned on multiple occasions over the past five years, to the point where it almost looks as though they are now flaunting their inappropriate conduct.  Moreover, they were taken to task for the same sorts of offenses carried out in the present lawsuit – the constant re-arguing of already terminated claims for the purpose of harassment.  Despite the sanctions ordered in *Janky I*, and the warning of further discipline should the behavior continue, Respondents – evidently undeterred  – proceeded to file the meritless complaint in this case. The dense record of disciplinary steps taken against Respondents makes their conduct in this case, if it were possible, even more unreasonable for the

16

simple fact that they should have known better by now.

The September 25, 2008 order also took issue with Respondents' numerous typographical mistakes, run-on sentences, spelling errors, and pervasive inability to put down on paper a cogent, comprehensible English sentence. *See* September 25, 2008 [DE 37] at 20. I would normally look past these transgression. A typo slips past everyone now and again, and not everyone writes like Chaucer. And while the inconvenience of having to decipher Respondents' filings would not, standing alone, justify an imposition of sanctions, the lack of care in this case evidences something different. It is another sign of Respondents' failure to investigate their own claims. Indeed, I have strong doubts as to whether they even bothered to proofread, let alone check the foundations of their legal theories. Here's an example: in Respondents' Brief in Support of Their Motion to Strike, wherein they mention a Motion for a Protective Order filed by **"DirecTV."** Br. in Supp. Mot. to Strike [DE 43] at 1. Clearly this was a misuse of the copy and paste function of their word processing software, as neither DirectTV nor protective orders have ever been mentioned in this case. There are plenty of other examples, all of which gives me strong suspicion that much of Respondents' Amended Complaint was really just a copy and paste of the *Janky I* copyright suit gone awry.

In sum, I find that this entire lawsuit was not warranted by existing law or by a nonfrivolous argument. I also find that the case was brought for an improper purpose, both to harass Defendants and to needlessly increase the cost of litigation. I make this latter finding based not just on the blatant frivolity of the claims, but also because of the context in which the suit was brought. Respondents were clearly unhappy with the result of *Janky I* because the jury award would not cover their attorney fees, and were facing an even worse situation if LCCVB proved successful in their two appeals. The overwhelming thicket of excessive motions in *Janky I* demonstrates a significant amount of leverage-seeking, and the current suit can only be

17

explained as a further attempt to get Defendants to back down and settle. Indeed, they attempted to do just that after filing this case by moving to enforce a global settlement agreement that was based on nothing more than a few emails between parties proposing some general settlement terms. *See* Mot. to Enforce Settlement [DE 22] *denied by* April 24, 2008 Order [DE 33]. The attorneys' history of similar harassing conduct in other jurisdictions, for which they were also disciplined, demonstrates a pattern and proof that they are using their redundant claims as a leverage and harassment tactic, as opposed to just overzealous advocacy or a failure to understand pertinent legal concepts. The bringing of claims in order to "cause expensive delay in the hope of getting paid to go away," is not a proper purpose under Rule 11. *Vollmer v. Selden*, 350 F.3d 656, 659-60 (7th Cir. 2003).

Sanctions should be set at the amount believed to serve the deterrent purpose of Rule 11 – to prevent repetition of the improper conduct. *Divane v. Krull Elec. Co.*, 319 F.3d 307, 314 (7th Cir. 2003); Fed.R.Civ.P. 11(c)(4). Since the sanctions were initiated by court order, and not by motion, Rule 11(c)(4) does not permit me to order the payment of attorney's fees. *Divane*, 319 F.3d at 1030. In *Janky I*, Judge Rodovich ordered sanctions pursuant to Rule 11 and on his own initiative. *See* Aug. 2, 2007 Docket Entry [*Janky 1* DE 323]. He imposed penalties in the amount of $3,500.00 against Attorney Reed and $1,500.00 against Attorney Hammonds payable to the Court. *Id*. This establishes a good starting point. As mentioned, Reed and Hammonds have been sanctioned not just in *Janky I*, but in previous cases outside this jurisdiction too. Given this history, a higher amount than what Judge Rodovich ordered is suitable for their most recent infractions, because previous sanctions have obviously not done the trick in deterring them from raising frivolous and redundant claims. Reed is therefore sanctioned in the amount of $10,000 and Hammonds in the amount of $5,000, payable to the U.S. District Court Clerk.

In addition, Attorneys Reed and Hammonds are prohibited from filing a complaint in a

civil case on behalf of Cheryl Janky in this district without simultaneously posting a bond of $5,000 to cover the high probability of additional sanctions. This includes papers filed expressly in Janky's name as well complaints filed at her request or for her benefit. This measure is authorized by the Court's Rule 11 powers and taken to protect opposing litigants and the judicial system. *See Sassower v. American Bar Ass'n.*, 33 F.3d 733, 736 (7th Cir. 1994); *Jean v. Dugan*, 29 F.Supp.2d 939, 941 (N.D. Ind. 1998).

Janky herself is also blameworthy to some extent. Although Rules 11(b)(2) and 11(c)(5)(A) do not permit courts to impose monetary sanctions upon represented parties for the presentment of frivolous claims, they still may be penalized with monetary sanctions under Rule 11(b)(1) for presenting claims for an improper purpose. *See Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 176 (2nd Cir. 1999); *Donahue v. Matrix Fin Servs. Corp.*, 110 F.3d 68, n. 1 (9th Cir. 1997); *The Cancer Found., Inc. v. Cerberus Capital Mgmt, L.P.*, 2008 WL 927989, at * 8 (N.D. Ill. April 4, 2008). Although Janky may not have had the legal sophistication to understand that the second federal lawsuit was really just a disguised reiteration of the first, as the client she was the one who authorized the filing of the complaint and at some point must have or should have asked why. Because the circumstances support the conclusion that the motivation behind the suit was to harass and increase costs for Defendants so as to bring about settlement of the already pending suits, she shares responsibility in bringing the claim for an improper purpose. She gains no sympathy for being a layperson unfamiliar with the intricacies of the legal system. One would hope that she had read the numerous orders and opinions issued in *Janky I* that warned the parties to cease their inappropriate filings. *See accord*, *Jean*, 29 F.Supp.2d at 940 (noting that client should have become actually or constructively aware of counsel's prior sanctionable conduct during dispute and inferring that subsequent suit was intended by both client and counsel to harass their

opponents.)  But even if Janky never set a glance to the written frustrations of Judges Cherry and Rodovich, or paid attention to the multiple occasions her own lawyers were sanctioned, she was at least made aware of the risks of bringing nuisance claims when she was personally sanctioned for maintaining an unsupportable jurisdictional argument. *See* June 16, 2006 Order [*Janky I* DE 149].  To reemphasize the point that she somehow missed on the first go-around, Janky is now sanctioned with a monetary penalty of $1,000.

I will give quick mention to the distressingly sizeable pile of motions and briefs created by the parties *after* the *sua sponte* Order to Show Cause. To quickly summarize: after the Respondents answered the Order to Show Cause, Defendants filed a Reply to that, Respondents moved to strike the Reply (along with asking for an award of fees and costs), Defendants moved for Rule 11 sanctions because of Respondents' Motion to Strike, and then Respondents opposed that Rule 11 motion and tacked on their own request for costs under Rule 11 (without any indication of compliance with Rule 11's "safe harbor letter" requirement.)  Def.'s Reply [DE 42]; Mot. to Strike [DE 43]; Def.'s Resp. to Mot. to Strike [DE 45]; Def.'s Mot. for Costs [DE 46]; Pl.'s Resp. to Mot. for Costs [DE 50]; Pl.'s Br. in Opp. to Motion for Costs [DE 51].

Enough is enough.  It is apparent that neither side can take the hint, and I am half convinced that both parties are treating matters as a joke.  But the best medicine will be to just end things.  Respondents will be sanctioned for their bringing of the current lawsuit, pursuant to the Court's Rule 11 powers.  It was the filing of the second federal suit that opened pandora's box and is the action most in need of court response in order to prevent future conduct. Although certainly the more innocent party, the Defendants' latest Rule 11 motion strikes me as an overreach.  Deterrence of abusive litigation practices is the central purpose of imposing Rule 11 sanctions. *Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990, 1013 (7th Cir. 2004); *see also*, Advisory Committee Notes to 1993 Amendments to Rule 11.  Tacking on additional

Rule 11 sanctions to those already ordered will produce only the most marginal of additional deterrent incentive, and for all I know, may just as likely prompt a new cavalcade of filings. I will therefore wade no deeper into this morass. The Respondents' subsequent motion to strike and both parties' motions for Rule 11 sanctions are all dismissed.

## CONCLUSION

1.     Attorney Gregory J. Reed is fined in the sum of **$10,000**, payable to the Clerk of the Court by 1 month from the date of this order.

2.     Attorney Stephanie L. Hammonds is fined in the sum of **$5,000**, payable to the Clerk of the Court by 1 month from the date of this order.

3.     Cheryl Janky is fined in the sum of **$1,000**, payable to the Clerk of the Court by 1 month from the date of this order.

4.     Attorneys Reed and Hammonds are prohibited from filing a complaint in a civil case on behalf of Cheryl Janky in this district without simultaneously posting a bond of **$5,000** to cover the high probability of additional sanctions.

5.     Respondents' Motion to Strike [DE 43] is **DISMISSED**.

6.     Defendants' Motion for Attorney Fees and Costs Pursuant to Rule 11 [DE 46] is **DISMISSED**. Janky's Motion for Extension to Respond [DE 48] is **DISMISSED** as moot.

**SO ORDERED.**

ENTERED: July 31, 2009

/s Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT